# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**LUIS ALBERTO NUÑEZ,**

      **Movant/Defendant,**

**v.**                                **Nos.**    **12-cv-1047 WJ/SMV**
                                                     **10-cr-3354 WJ**

 **UNITED STATES OF AMERICA,**

      **Respondent/Plaintiff.**

## <u>MAGISTRATE JUDGE'S PROPOSED FINDINGS<br>AND RECOMMENDED DISPOSITION</u>

THIS MATTER is before the Court on Movant/Defendant (hereinafter "Defendant") Luis Alberto Nuñez's Motion Under § 2255 . . . [Doc. 1], filed on October 9, 2012. Respondent/Plaintiff (hereinafter "the Government") filed a response [Doc. 6] to the motion on December 10, 2012. Defendant did not file a reply. Defendant was charged with a violation of 21 U.S.C. § 846, Conspiracy to Possess with Intent to Distribute a Quantity of Heroin, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(c). He entered into a plea agreement, pleaded guilty, and was sentenced to 57 months incarceration. He now claims that he is entitled to have his sentence vacated because (1) his trial counsel was constitutionally ineffective, and (2) the district judge who sentenced him committed plain error in imposing a 2-level upward departure under the Federal Sentencing Guidelines for his role as a manager or supervisor of the conspiracy. The Government contends that Defendant's claims are barred by the appellate waiver provisions in his plea agreement and that Defendant's trial counsel was not ineffective. The Government submitted an affidavit of trial counsel, Jerry Walz, in support of its arguments.

United States District Judge William Johnson referred the claims raised in the motion to the undersigned on October 18, 2012, for proposed findings and a recommended disposition. Order of Reference . . . [Doc. 3]. In making my findings and recommendations in this matter, I have meticulously examined all of the pertinent pleadings and attachments in this civil proceeding and the underlying criminal case, 1:10-cr-03354-WJ-3.[1] Specifically, I have reviewed the motion [Doc. 1]; the Government's Response [Doc. 6]; the Affidavit of Jerry A. Walz, Esq. [Doc. 6-1];  Defendant's Plea Agreement [Cr. Doc. 122]; the transcript of the Plea Hearing before United States Magistrate Judge Robert Scott [Cr. Doc. 199]; the Presentence Investigation Report (hereinafter "PSR");[2] Defendant's Objection to Pre-Sentence Investigation Report [Cr. Doc. 156]; and the transcript of the Sentence Proceedings before (then) Chief United States District Judge Bruce D. Black [Cr. Doc. 198]. Because it is possible to resolve the issues on the pleadings, and because the record establishes conclusively that Defendant is not entitled to relief under § 2255, I find that no evidentiary hearing is necessary. *See* 28 U.S.C. § 2255(b); *United States v. Kennedy*, 225 F.3d 1187, 1193 (10th Cir. 2000).  Having carefully considered the parties' submissions, the relevant law, and the record in this case and the underlying criminal case, I recommend that that Defendant's § 2255 motion be **DENIED** and that Case No. 1:12-cv-01047 be **DISMISSED with prejudice.**

---

[1] I will refer to filings in the criminal case as CR Doc. _____, and to filings in the civil case as Doc. _____.

[2] As a matter of practice in this district, PSRs are not filed of record.  Thus, a redacted version is attached as Exhibit A.

## Factual and Procedural Background

On November 23, 2010, Defendant and three co-defendants were charged via a criminal complaint with Conspiracy with Intent to Distribute 100 grams and more of Heroin. [Cr. Doc. 1]. On December 15, 2010, a federal grand jury returned a three-count indictment charging the Defendants with Conspiracy, in violation of 21 U.S.C. § 846, and two counts of Possession with Intent to Distribute 100 Grams and More of Heroin, and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2. [Cr. Doc. 22]. On January 5, 2011, attorney Jerry Walz was appointed to represent Defendant. [Cr. Doc. 47].  On September 27, 2011, Defendant waived his right to an indictment, [Cr. Doc. 121], and entered into a written plea agreement with the Government, [Cr. Doc. 122].

The plea agreement provides, in part, that Defendant knew he had the right to plead not guilty and to have a trial by jury. *Id*. at 1. With respect to the maximum sentence the Court could impose, the plea agreement provided that Defendant understood he could receive a sentence of up to 20 years' imprisonment. *Id*. at 2. Defendant agreed that his signature on the plea agreement acknowledged that he was guilty of the offense to which he was pleading guilty, that he recognized and accepted responsibility for his criminal conduct, and that, should he elect to proceed to trial, he understood that the Government could prove facts sufficient to establish his guilt a reasonable doubt. *Id*. at 4.

Defendant and the Government stipulated in the plea agreement that Defendant was responsible for at least 100 grams but less than 400 grams of heroin, and that, accordingly, his base offense level under the Federal Sentencing Guidelines was 26. *Id*. at 5. They further

3

stipulated that Defendant was entitled to a three-level reduction for acceptance of personal responsibility. *Id.* at 6.   In exchange, Defendant agreed not to seek any further downward departure or variance form the applicable sentencing guideline range as determined by the Court. *Id.* at 7. "In other words, the Defendant agrees that a sentence within the applicable guideline range is a reasonable sentence." *Id.* The plea agreement went on to provide:

> The Defendant understands that the above stipulations are not binding on the Court and that whether the Court accepts these stipulations is a matter solely within the discretion of the Court after it has reviewed the [PSR].   Further, the Defendant understands that the Court may choose to vary from the advisory guideline sentence.  The Defendant understands that if the Court does not accept any one or more of the above stipulations and reaches an advisory guideline sentence different than expected by the Defendant, or if the Court varies from the advisory guideline range, the Defendant will not seek to withdraw the Defendant's plea of guilty. In other words, regardless of any stipulations the parties may enter into, the Defendant's final sentence is solely within the discretion of the Court.

> *         *         *

> The Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set forth in this agreement). There have been no promises from anyone as to what sentence the Court will impose.  The Defendant also represents that the Defendant is pleading guilty because the Defendant is in fact guilty.

*Id.* at 8, 10-11.

As to waiver of appellate rights, the plea agreement provided:

> The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a Defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence and fine within or below the applicable advisory

4

> guideline range as determined by the Court. The Defendant specifically agrees not to appeal the Court's resolution of any contested sentencing factor in determining the advisory sentencing guideline range. In other words, the Defendant waives the right to appeal both the Defendant's conviction(s) and the right to appeal any sentence imposed in this case except to the extent, if any, that the Court may depart or vary upward from the advisory sentencing guideline range as determined by the Court. In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver.

*Id.* at 9–10.

On September 27, 2011, the Assistant United States Attorney, Defendant, and Defendant's counsel all signed the plea agreement. The following paragraph appears directly above Defendant's signature:

> This Agreement has been read to me in the language I understand best, and I have carefully discussed every part of it with my attorney. I understand the terms of this Agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this Agreement. No promises or inducements have been given to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this Agreement. Finally, I am satisfied with the representation of my attorney in this matter.

*Id.* at 12. Attorney Walz signed his name under the following paragraph:

> I am the attorney for LUIS ALBERTO NUNEZ, a/k/a Enrique Diaz-Lozano a/k/a Gordo. I have carefully discussed every part of this Agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into

5

> this Agreement.  To my knowledge, my client's decision to enter
> into this Agreement is an informed and voluntary one.

*Id*.

Defendant appeared with his attorney for a change-of-plea hearing before Judge Scott on September 27, 2011. [Cr. Doc. 199] at 1, 2. A Spanish-language interpreter was present and utilized. *Id*. at 1, 2. Defendant was sworn in at the beginning of the hearing. *Id*. at 2. Judge Scott advised Defendant of his rights to plead not guilty, to proceed to trial, and all the rights that would go along with a jury trial. *Id*. at 2–3. Judge Scott asked Defendant how old he was and how much schooling he had. Defendant answered that he was 21 years old and that he had finished the ninth grade. *Id*. at 3. He denied being under the influence of alcohol, drugs, or medications, or that he had recently been treated for any mental illness or addiction to drugs or alcohol. *Id*. at 3–4. He also indicated that he was satisfied with the representation Mr. Walz had provided. *Id*. at 4.

In response to questioning by Judge Scott, Defendant stated that he wished to give up his trial rights and to plead guilty, that he understood he would not be able to change his mind or withdraw his guilty plea after he was sentenced, and that a copy of the Information had been read to him in Spanish. *Id*. at 3–8. Defendant testified that he understood the maximum penalties, i.e., a term of imprisonment for a period of not more than 20 years, a fine of not more than $1,000,000, a mandatory term of supervised release of not less than three years, a mandatory special penalty assessment of $100, and restitution as ordered by the Court. *Id*. at 6. With respect to the stipulations in the plea agreement, the following exchange occurred:

> **THE COURT:**   In Paragraphs Ten and Eleven, which are on Pages 5, 6, 7 and 8, you've entered into certain stipulations with the United States.  Is it clear to you and do you understand that these stipulations are not binding upon your sentencing judge, and whether or not the Court accepts these stipulations is a matter solely within the discretion of the Court after it's reviewed your [PSR]? Do you understand that?
>
> **THE DEFENDANT:**  Yes.

*Id.* at 6–7. And with respect to Defendant's understanding of the terms of the plea agreement, the

following exchange occurred:

> **THE COURT:**   .  .  . I was given the original of your plea agreement. It's 12 pages long and I'm showing you the last page. Is this your signature on it?
>
> **THE DEFENDANT:**  Yes.
>
> **THE COURT:**  Did you have enough time to have this  plea agreement read to you in Spanish and review it with your attorney before you signed it?
>
> **THE DEFENDANT:**  Yes.
>
> **THE COURT:**  Are you satisfied that you understand the terms of this plea agreement?
>
> **THE DEFENDANT:**  Yes.
>
> **THE COURT:**  Has anyone threatened you or coerced you in any way to get you to plead guilty today?
>
> **THE DEFENDANT:**  No.
>
> **THE COURT:**  Have any promises been made to you other than those that are in this plea agreement?
>
> **THE DEFENDANT:**  No.

> **THE COURT:**  Are you pleading guilty voluntarily because you are guilty?
>
> **THE DEFENDANT:** Yes.

*Id.* at 5–6.  Judge Scott accepted Defendant's plea after finding that he was fully competent and capable of entering an informed plea and that the plea was voluntary and knowingly made. *Id.* at 9.

A probation officer interviewed Defendant and prepared a PSR. At the interview, Defendant initially denied any involvement in the drug conspiracy. PSR at 12. Later, however, he apparently retracted that statement and told the officer, "I am conscious that what I did was wrong and I accept responsibility for what I did." *Id.* Accordingly, the PSR recommended a three-level downward departure for acceptance of personal responsibility. *Id.* at 13. As mentioned, *supra*, the parties had stipulated to a base offense level of 26. *See* [Cr. Doc. 122] at 5. That would have put Defendant at a total offense level of 23 (base offense level of 26, minus 3 levels for acceptance of responsibility). However, the probation officer recommended a two-level enhancement for Defendant's "managerial role in the conspiracy." PSR at 13; *see* U.S. Sᴇɴᴛᴇɴᴄɪɴɢ Gᴜɪᴅᴇʟɪɴᴇs Mᴀɴᴜᴀʟ § 3B1.1(c) (2011) (amended 2012) ("Based on the defendant's role in the offense, increase the offense level as follows: . . . . If the defendant was an organizer, leader, manager, or supervisor in any criminal activity [involving fewer than five participants], increase by **2** levels.") (emphasis in original). That recommendation was based on a finding that "Nunez had a managerial role in the conspiracy and directed at least the three other co-defendants." PSR ¶ 40.  The probation officer based that finding on the testimony of the investigating officers and at least two of the co-defendants. *See* PSR at 5–11. Their testimony

8

established that, while Defendant might not have been the leader of the drug conspiracy, he was deeply involved in the operation of the enterprise. For example, he recruited at least one new "worker," PSR ¶¶ 24, 29, and would take orders for heroin over the telephone and dispatch "runners" to deliver it and collect payments, PSR ¶ 14 ("Throughout 2010, agents utilizing confidential informants successfully completed multiple controlled purchases of heroin in Espanola and Albuquerque, New Mexico by contacting [Nuñez], who would then dispatch runners to deliver the heroin to buyer."). Additionally, Nuñez directed at least three of his co-defendants and had an intimate knowledge of the conspiracy. PSR ¶ 30.

Defendant had a prior felony conviction for Possession and Sale of a Narcotic Substance. PSR ¶ 45. Thus, under the Sentencing Guidelines he had a criminal history category of I. The PSR recommended a total offense level of 25 (base offense level of 26, minus 3 levels for acceptance of responsibility, plus 2 levels for managerial role), resulting in an imprisonment range of 57 to 71 months. PSR ¶¶ 36–44, 71. Had Defendant been convicted of Count 1 of the Indictment, he would have been facing a minimum sentence of 5 years and a maximum sentence of 40 years. PSR ¶ 72. Had he been convicted at trial of the charges in the Information,[3] the statutory maximum penalty would have been 20 years' imprisonment. *Id*. The guideline calculation for a trial conviction would have been based on an offense level of 28, absent any adjustment for acceptance of responsibility. *Id*. ¶¶ 72, 43. An offense level of 28, combined with

---

[3] After reaching a plea agreement with Defendant, the Government dismissed the Indictment and filed an Information charging him with one count of Conspiracy to Possess with Intent to Distribute a Quantity of Heroin. *See* [Cr. Doc. 120], filed on September 27, 2011. *See generally United States v. Ortiz*, 182 F.3d 934 (Table, text in Westlaw), 1999 WL 317565, at ¶ 4 (10th Cir. May 20, 1999) (noting district court's having taken into account "the circumstances of defendant's very favorable plea agreement" in making factual determination whether the defendant would, in fact, have proceeded with an appeal but for counsel's actions).

a criminal history category of I, would have resulted in a guideline imprisonment range of 78 to 97 months. *Id*. ¶ 72. Thus, Defendant received substantial benefit from the plea agreement:  The lower end of the sentencing range was reduced from 78 to 57 months. *Id.*

The PSR was disclosed to defense counsel on November 30, 2011. [Cr. Doc. 156] at 1. This was apparently a preliminary report that did not include the three-level reduction for acceptance or responsibility. *See* Objection to Pre-Sentence Investigation Report [Cr. Doc. 156] at 1. Counsel objected to the lack of the three-level downward departure. *Id*. It is unclear how that dispute was resolved, but it obviously was resolved. The final PSR did give the Defendant the three-level departure for acceptance of responsibility. PSR ¶¶ 43, 37–44. However, defense counsel did not object to the two-level upward departure for managerial role. *Compare* [Cr. Doc. 156], *with* PSR ¶ 40. According to Mr. Walz's affidavit, he considered challenging the upward departure but decided not to after reviewing the PSR:  "Following this review, it was determined that it would be futile and frivolous to challenge this two level upward departure because of the extensive role of Defendant Nunez in the drug conspiracy." Walz Affidavit [Doc. 6-1] at 2.

Defendant appeared with Mr. Walz at a sentencing hearing on April 11, 2012, before (then) Chief United States District Judge Bruce D. Black. [Cr. Doc. 198]. Judge Black asked Mr. Walz if he had reviewed the PSR in Spanish with the Defendant. [Cr. Doc. 198] at 2. Mr. Walz said that he had. *Id*. Judge Black asked him if he had any challenges to the factual statements or the guideline proposals. Mr. Walz responded, "No, sir." *Id*. Mr. Walz then requested a sentence at the low end of the guideline range. *Id*. at 3. Judge Black granted the

request and imposed a sentence of 57 months' imprisonment, i.e., the very bottom of the guideline range. *Id*. at 4. Judge Black then asked if the Defendant had waived his right to appeal in the plea agreement. Mr. Walz responded that he had done so. *Id* at 5. Defendant did not appeal his sentence. He filed this § 2255 motion on October 9, 2012. [Doc. 1; Cr. Doc. 194].

<u>Discussion</u>

In reviewing Defendant's pro se pleadings liberally, *see United States v. Guerrero*, 488 F. 3d 1313, 1316, (10th Cir. 2007), I find that the motion raises six claims. I will list them here, not necessarily in the order in which they appear in the motion:

1. The District Court committed plain error by imposing the two-level upward departure based on managerial role;

2. Defense counsel was constitutionally ineffective by failing to file any written objections to the PSR;

3. Defense counsel was constitutionally ineffective by failing to object to the two-level upward departure in the PSR based on managerial role;

4. Defense counsel was constitutionally ineffective by failing to file a notice of appeal based on the two-level upward departure;

5. Defense counsel was constitutionally ineffective by advising Defendant to accept the plea agreement with the understanding that neither the government nor the PSR would recommend an upward departure for managerial role, and that the harshest sentence allowed under the "real" plea agreement was 46 months; and

6. Defense counsel was constitutionally ineffective by failing "to inform [Judge Black] of the plea agreement enter[ed] into by the parties," which I interpret as, "Counsel failed to advise Judge Black that I had accepted the plea agreement with the understanding that the maximum sentence I could receive was 46 months."

*See* [Doc. 1] at 4–6.

I find that Claims 1–4 are waived because Defendant's plea agreement precludes him from appealing or collaterally attacking his sentence. Alternatively, I recommend that they be

11

denied because they are without merit. I further find that Claims 5 and 6, though not waived, are without merit and should be denied because Defendant has failed to prove, or even allege, that but for counsel's alleged ineffectiveness, there is a reasonable probability that Defendant would not have pleaded guilty and instead would have proceeded to trial.

I.    **Claims 1–4**

A. **Claims 1–4 are barred by Defendant's waiver of appellate rights in the plea agreement.**

Defendant's plea agreement states that "Defendant agrees to waive any collateral attack to the Defendant's conviction(s) pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver." [Cr. Doc. 122] at 9–10. The Tenth Circuit has held that such waivers are "generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). "When determining whether a waiver of appellate rights is knowing and voluntary, we especially look to two factors. First, we examine whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily. Second, we look for an adequate Federal Rules of Criminal Procedure 11 colloquy." *United States v. Hahn,* 359 F.3d 1315, 1325 (10th Cir. 2004) (internal citation omitted). Both requirements are satisfied in this case.

The plea agreement expressly states, "Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set forth in this agreement). There have been no promises from anyone as to what sentence the Court will impose." [Cr. Doc. 122] at 10–11. Just above Defendant's signature

12

on the plea agreement, it states that the plea agreement was read to him in the language he understands best; that he had carefully discussed every part of the agreement with his attorney; that his attorney had advised him of his rights, of possible defenses, of the relevant Sentencing Guidelines provisions, and of the consequences of entering into the agreement; *that he understands the terms of the agreement and voluntarily agrees to these terms;* that no promises or inducements were given to him other than those contained therein; and that no one had threatened or forced him in any way to enter into the agreement. *Id.* at 12. It is clear, therefore, that the first *Hahn* requirement was satisfied.

The second *Hahn* requirement is an adequate Rule 11 colloquy. Rule 11(b) of the Federal Rules of Criminal Procedure provides:

> (b) Considering and Accepting a Guilty or Nolo Contendere Plea.
>
> (1) *Advising and Questioning the Defendant*. Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
>
> > (A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;
> >
> > (B) the right to plead not guilty, or having already so pleaded, to persist in that plea;
> >
> > (C) the right to a jury trial;
> >
> > (D) the right to be represented by counsel—and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding;

(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

(G) the nature of each charge to which the defendant is pleading;

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

(I) any mandatory minimum penalty;

(J) any applicable forfeiture;

(K) the court's authority to order restitution;

(L) the court's obligation to impose a special assessment;

(M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. §3553(a); and

(N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

(2) *Ensuring That a Plea Is Voluntary.* Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

(3) *Determining the Factual Basis for a Plea.* Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.

Fed. R. Crim. P. 11(b).

14

Judge Scott's colloquy was more than adequate. He followed Rule 11 scrupulously. He advised the Defendant, "The Government has the right, in a prosecution for perjury or false statement, to use anything you may say against you." [Cr. Doc. 199] at 2. He advised Defendant of his right to plead not guilty, or to persist in that plea if he had already pled guilty. *Id.* at 2–3. He advised Defendant of his right to a jury trial. *Id.* at 3. He advised Defendant of his right to be represented by counsel—and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding. *Id.* He advised Defendant of his trial rights, including the rights to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses. *Id.* Judge Scott advised Defendant that he would be waiving these trial rights if the court were to accept his plea of guilty. *Id.* He advised Defendant of the nature of each charge to which the defendant was pleading. *Id.* at 8. He advised Defendant of the maximum possible penalties, including imprisonment, fine, and term of supervised release. *Id.* at 6.  He advised Defendant of the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors. *Id* at 7−8. He reviewed, albeit briefly, the terms of the plea-agreement provision waiving the right to appeal or to collaterally attack the sentence. *Id.* at 7. Defendant stated that he had reviewed those provisions with his attorney and that he was satisfied he understood what he was waiving. *Id.* Judge Scott addressed the Defendant in open court and determined that the plea was voluntary and did not result from force, threats, or promises (other than promises in the plea agreement). *Id.* at 3–9. Finally, before accepting the plea, Judge Scott determined that there was

15

a factual basis for the plea. *Id*. at 8. It is clear from the record that the second *Hahn* requirement has been satisfied.

For the foregoing reasons, I find that Defendant knowingly and voluntarily waived his right to bring Claims 1–4, *supra*, and that such claims are now barred. *See Hahn,* 359 F.3d at 1325; *see also United States v. Castillo-Rivera*, No. 08-2221, 326 F. App'x. 473 (10th Cir. May 4, 2009) (unpublished) (enforcing waiver of appellate rights under facts nearly identical those in this case).

### B.  Claims 1–4 are without merit.

Even if Claims 1–4 had not been waived, I would recommend that they be dismissed because they are without merit. In Claim 1, Defendant claims that the District Court committed plain error by imposing the two-level upward departure for Defendant's managerial role in the drug conspiracy. *See* [Doc. 1] at 5. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects [the defendant's] substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Caraway*, 534 F.3d 1290, 1298 (10th Cir. 2008) (internal quotation marks omitted). Defendant has failed to show that the District Court committed error. As explained *supra*, there was abundant evidence in the PSR to support a finding that Defendant played a managerial or supervisory role in the drug conspiracy. PSR at 5–11. Indeed, there is nothing in the PSR to refute the finding, and Defendant gives no indication of what evidence might exist contrary to the finding. Defendant does not even attempt to deny the finding in his motion. *See* [Doc. 1]. He merely states that he should not have received the upward departure. *Id.* at 4. Conclusory allegations, without a supporting factual basis, are

insufficient to support a § 2255 claim. *E.g., United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). I find, therefore, that Claim 1, if not waived, is without merit and should be denied.

In Claim 2, Defendant argues that defense counsel was constitutionally ineffective by failing to file "any written objections" to the PSR. [Doc. 1] at 4. This claim is factually unsupported. Counsel did file an objection to the PSR. [Cr. Doc. 156]. I find, therefore, that Claim 2, if not waived, is without merit and should be denied.

In Claim 3, Defendant claims that his counsel was constitutionally ineffective by failing to object to the two-level upward departure in the PSR based on managerial role. [Doc. 1] at 4. Generally, "[t]he benchmark for judging any claim of ineffectiveness must be whether the counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, (1984). To obtain relief on an ineffective assistance of counsel claim, a defendant must satisfy the requirements set out in *Strickland*. First, the defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In other words, trial counsel's performance was neither reasonable under prevailing professional norms nor sound trial strategy. Second, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A probability is reasonable if it is sufficient to undermine confidence in the outcome. *Id.* Courts may address the performance and prejudice components in any order and need not address both if it concludes that the defendant failed to satisfy demonstrating one of the two prongs. *Id.* at 697; *United States v. Gonzalez*, 596 F.3d 1228, 1233 (10th Cir. 2010).

17

In *Strickland*, the United States Supreme Court emphasized that judicial scrutiny of counsel's performance must be highly deferential. A court should not second-guess counsel's representation after an adverse sentence. Rather, an attorney's performance should be evaluated from counsel's perspective at the pertinent time, giving due regard to counsel's trial tactics and strategy, and thereby eliminating any distorting effects of 20/20 hindsight. A court must indulge a strong presumption that counsel's conduct was reasonable trial strategy. *Strickland*, 466 U.S. at 689. The defendant has the burden of proof to overcome that presumption. *United States v. Cronic*, 466 U.S. 648, 658 (1984). "For counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision . . . must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy." *Hatch v. Okla.*, 58 F.3d 1447, 1459 (10th Cir. 1995) (internal quotation marks omitted), *partially overruled on other grounds by Daniels v. United States*, 254 F.3d 1180 (10th Cir. 2001).

In this case, there is no dispute that Defendant discussed with his attorney the idea of objecting to the two-level upward departure. *See* Walz Affidavit, [Doc. 6-1] at 2. Mr. Walz explains, however, that he decided not to object to the departure in the exercise of his professional judgment:

> There was extensive discussion with Defendant Nunez regarding the proposed two level upward departure recommended in the PSR for the manager role. Both myself, and my associate, Alfred Creecy, carefully reviewed with Defendant Nunez the Government's evidence against Defendant regarding his role in the conspiracy. Following this review, it was determined that it would be futile and frivolous to challenge this two level upward departure because of the extensive role of Defendant Nunez in the drug conspiracy. Defendant Nunez understood and concurred in this decision.

*Id*. Believing that such a challenge would be frivolous, Mr. Walz had no duty to raise it. *See United States v. Sanders*, 372 F.3d 1183, 1186 (10th Cir 2004) (counsel's failure to object to a PSR can only amount to deficient performance when the objection is meritorious). Moreover, knowing that he would be asking the Court for a sentence at the lowest end of the Sentencing Guidelines, Mr. Walz may very well have thought that raising a frivolous challenge would harm his credibility, to the Defendant's detriment. I note that Defendant has made no attempt to refute the above statement in Mr. Walz's affidavit. Accordingly, I find that Defendant has failed to overcome the strong presumption that his attorney's decision not to challenge the two-level upward departure recommended in the PSR was a reasonable trial strategy. I find, therefore, that Claim 3, if not waived, is without merit and should be denied.

In Claim 4, Defendant claims that Defense counsel was constitutionally ineffective by failing to file a notice of appeal based on the two-level upward departure. [Doc. 1] at 5.  I find that this claim is without merit for two reasons. First, Defendant knowingly and voluntarily waived his right to appeal in the plea agreement. *See* discussion at Section IA, *supra*. Having waived his right to appeal, Defendant cannot now blame his attorney for failing to file a notice of appeal. *See, e.g., United States v. Viera*, 674 F.3d 1214, 1218–19 (10th Cir. 2012) ("We are satisfied that the plea agreement waived Mr. Viera's ineffective assistance claim because counsel's alleged failure to file an appeal does not undermine the validity of the plea or the waiver.") (citing *Cockerham*, 237 F.3d at 1187).

Second, an ineffective-assistance-of-counsel claim based on counsel's failure to file a notice of appeal must be judged in accordance with the two-pronged test set forth in *Strickland*,

466 U.S. at 687–88, 694. For example, an attorney who disregards "specific instructions" from a defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Under those circumstances, the defendant need not demonstrate that his appeal would likely have had merit. *Id*. When a client does not specifically instruct his attorney to appeal, the question of whether counsel was ineffective depends on whether he or she consulted with the defendant about the appeal. *Id*. at 478.

However, an attorney need not always consult with a defendant regarding an appeal.

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal where there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id*. at 480. "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id*.

Here, there is no evidence that Defendant communicated to Mr. Walz that he wished to appeal, and there are no non-frivolous grounds for an appeal. Mr. Walz denies that Defendant asked him to file an appeal, [Doc. 6-1] at 2; Defendant does not allege that he asked Mr. Walz to file an appeal, *see* [Doc. 1] at 4; and there is no evidence in the record to suggest otherwise.[4]

---

[4] I note also that Defendant made no attempt to file an appeal himself. *See United States v. Ortiz*, No. 98-6271, 182 F.3d 934 (Table), 1999 WL 317565 (10th Cir. May 20, 1999) (unpublished) ("Armed with this information [that his appeal would likely be unsuccessful], Ortiz chose not to instruct his attorney to file a direct appeal, but rather to wait and file a § 2255 motion. Under such circumstances, the attorney's performance was within reasonable limits.")

Defendant contends that Mr. Walz should have filed an appeal on the grounds that "[Defendant's] plea agreement was for 46 months." [Doc. 1] at 4. Yet there was no provision in the plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) that Defendant would receive a 46-month sentence. *See* [Cr. Doc. 122]. The plea agreement is void of any reference to a specific sentence. What it does say is that "regardless of any stipulations the parties may enter into, the Defendant's final sentence is solely within the discretion of the Court." *Id*. at 8. The agreement further provides, "There have been no promises from anyone as to what sentence the Court will impose." *Id*. at 10–11. At his change-of-plea hearing, Judge Scott asked Defendant, "Have any promises been made to you other than those that are in the plea agreement?" [Cr. Doc. 199] at 5. His answer was, "No." *Id*.  When reviewing a prior guilty plea, courts do not second guess the veracity of a defendant's statements in open court at the time of the plea. *See United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988) ("A defendant's statements at a plea hearing should be regarded as conclusive . . . in the absence of a believable, valid reason justifying departure from the apparent truth of those statements.") (internal quotation marks omitted). Defendant offers no reason to disregard his sworn testimony at the plea hearing, let alone a "valid, believable reason." I concur with Mr. Walz that an appeal based on an unwritten agreement that Defendant would be sentenced to no more than 46 months would have been frivolous. Defendant has failed to show that, but for his counsel's actions, Defendant would have filed a timely notice of appeal. Accordingly, I find that he has failed to establish prejudice under *Strickland* and *Flores-Ortega*. I find therefore, that Claim 4, if not waived, is without merit and should be denied.

21

**II**      **Claims 5 and 6 (Ineffective Assistance of Counsel in Negotiating or Entering into the Plea Agreement)**

    **A.  Claims 5 and 6 were not waived.**

Claims 5 and 6 relate to counsel's assistance in negotiating or entering into the plea agreement. Such claims were expressly exempted from the waiver of appellate rights in Defendant's plea agreement. *See* [Cr. Doc. 122] at 9–10; *see also Cockerham*, 237 F.3d at 1187 ("A plea agreement waiver of post-conviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver."). I find, therefore, that they are not barred by the plea agreement.

    **B.  Claims 5 and 6 are without merit.**

Defendant claims that his counsel was constitutionally ineffective by advising him to accept the plea agreement with the understanding that neither the government nor the PSR would recommend an upward departure for managerial role. [Doc. 1] at 5.  He also claims that counsel was ineffective by failing "to inform [Judge Black] of the plea agreement enter[ed] into by the parties," which I interpret as stating, "Counsel failed to advise Judge Black that I had accepted the plea agreement with the understanding that the maximum sentence I could receive was 46 months." *See* [Doc. 1] at 5–6. Mr. Walz's affidavit addresses each of these allegations. *See* [Doc. 6-1]. Mr. Walz disputes that he ever advised Defendant that neither the Government nor the PSR would recommend an upward departure. *Id.* at 3–4. He further contends that there was never any agreement that Defendant's sentence would be 46 months, and that Judge Black, as well as Judge Scott, were fully aware of the actual terms plea agreement. *Id.* at 3.

22

> [I]n *Hill v. Lockhart*, 474 U.S. 52, 88 L. Ed. 2d 203, 106 S. Ct. 366
> (1985), the Supreme Court specifically considered the appropriate
> standard for demonstrating that a guilty plea was tainted by
> ineffective assistance of counsel. The Court held that a prisoner
> challenging a guilty plea because of ineffective assistance satisfies
> the prejudice inquiry by showing that the constitutionally
> ineffective performance "affected the outcome *of the plea process.*
> In other words . . . that there is a reasonable probability that, but
> for counsel's errors, he would not have pleaded guilty and would
> have insisted on going to trial."

*Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (quoting *Hill*, 474 U.S. at 59)

(emphasis and ellipsis in *Miller*).  Thus, a defendant who challenges a guilty plea based on

ineffective assistance of counsel must meet the *Strickland* two-pronged test by demonstrating

(1) deficient performance by counsel that (2) caused prejudice to the defendant, such that "but

for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going

to trial[.]" *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993). In applying this

standard, courts sometimes will look to the strength of the government's case "as the best

evidence of whether a defendant in fact would have changed his plea and insisted on going to

trial." *Miller*, 262 F.3d at 1072.

There is no evidence in the record tending to show that, but for Mr. Walz's alleged

ineffective assistance, Defendant would not have pleaded guilty and would have insisted on

going to trial. Such an argument on Defendant's behalf would be dubious. The Government had

a very strong case against him. *See* [PSR] at 3–11. All of his co-defendants pleaded guilty, and at

least two of them were apparently willing to testify against him. *See* [PSR] at 3–10 (regarding

testimony of co-defendants Roxanne Martinez and Salvador Contreras-Leon). Had he gone to

trial and been convicted of Count 1 of the Indictment, he would have been facing a sentence of 5

to 40 years' imprisonment. *See id.* at 20. Furthermore, he does not allege that he would not have pleaded guilty absent his attorney's alleged ineffectiveness; he claims only that he should have been sentenced to 46 months rather than 57. *See* [Doc. 1]. Given the strength of the Government's case against him, it would be specious for him to argue that he would have risked a 40 year prison term rather than accept 57 months under his plea agreement. Thus, he has failed to show prejudice under the second *Strickland* prong. *See Miller*, 262 F.3d at 1072. For these reasons, I find that Defendant's claims of ineffective assistance of counsel in negotiating or entering into the plea agreement, Claims 5 and 6, are without merit and should be denied.

<u>Conclusion</u>

For the reasons stated above, I recommend that the claims raised in Defendant's § 2255 motion [Doc. 1] be **DENIED,** and that this action be **DISMISSED with prejudice.**

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**